Filed 9/20/23  Ashlynn Marketing Group v. Keryo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ASHLYNN MARKETING GROUP, INC. et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> NAZAR KERYO, <br><br> Defendant and Appellant. | D081029 <br><br><br> (Super. Ct. No. 37-2022-00006413-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.

Farivar Law Firm, Fahim Farivar, Brian Ning, and Catherine Jung for Defendant and Appellant.

Caldarelli Hejmanowski Page & Leer, Marisa Janine-Page, and William J. Caldarelli for Plaintiffs and Respondents.

Ashlynn Marketing Group, Inc. (Ashlynn Marketing), Wasem Saliman, and Lina Saliman (Ashlynn Marketing and the Salimans collectively referred to as Plaintiffs) brought suit against SRSupplements, Inc. (SRS), Nazar

Keryo, and Raed Matti for various causes of actions based on alleged business wrongdoings.[1] Plaintiffs averred a breach of contract against Nazar only, claiming that he breached the subject contract by violating certain noncompetition and nonsolicitation provisions.

The subject contract contained an arbitration clause. Nazar moved to compel arbitration as to all claims against him. The superior court denied the motion, finding that the third party litigation exception under Code of Civil Procedure[2] section 1281.2, subdivision (c) applied.

Nazar appeals the superior court's order, contending the court erred in applying the third party litigation exception to deny his motion to compel arbitration. In addition, he claims the court abused its discretion by denying the motion to compel arbitration rather than staying the litigation to allow Nazar and Plaintiffs to arbitrate their dispute. We reject these contentions and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Ashlynn Marketing is a California corporation engaged in the manufacture, sale, and distribution of vaping and nutritional products, including kratom products. The Salimans are the present owners of Ashlynn Marketing. Previously, the Salimans jointly owned Ashlynn Marketing with the Keryos. However, Nazar indicated that he wanted to retire and withdraw from the business.

---

[1] Although not a party in this action, Nazar's wife, Wansa, played a role in the factual underpinnings of the dispute before us. Thus, to avoid confusion, we refer to Nazar Keryo and Wansa Keryo by their first names when necessary.

[2] Statutory references are to the Code of Civil Procedure unless otherwise specified.

In July 2020, the Salimans and the Keryos entered into a stock purchase agreement (Agreement) whereby the Salimans agreed to pay the Keryos $2.5 million to acquire the Keryos' entire equity interest in Ashlynn Marketing. The Agreement included noncompete and nonsolicitation provisions that prohibited the Keryos from directly or indirectly manufacturing, distributing, or selling certain products (including kratom and cannabidol (CBD)), within a defined geographic area, for a period of 20 years from the execution of the Agreement. However, after the Agreement was signed, Nazar began competing against Ashlynn Marketing in the kratom and CBD markets.

In August 2021, the Salimans and the Keryos engaged in a mediation after a dispute arose regarding Nazar's alleged violation of his obligations under the noncompetition and nonsolicitation provisions of the Agreement.[3] That mediation proved successful, as the Salimans entered into a Stipulation for Settlement (Settlement) that, among other provisions, modified the period in which the Keryos would not compete with Ashlynn Marketing.[4] Nonetheless, Nazar allegedly continued to compete against Ashlynn Marketing in violation of the Settlement.

On February 17, 2022, Plaintiffs filed suit against Nazar, Matti, and SRS, alleging causes of action for breach of contract (against Nazar only), breach of the implied covenant of good faith and fair dealing (against Nazar only), unfair business practices (Bus. & Prof. Code, § 17200) (against all

---

[3] The Agreement contained specified dispute resolution procedures, including mediation and arbitration.

[4] The Stipulation modified the dispute resolution procedure set forth in the Agreement to delete the mediation requirement. The Agreement's arbitration provision otherwise remained unchanged.

defendants), inducing breach of contract (against Matti and SRS only), interference with contract (against Matti and SRS only), and conspiracy to defraud (against all defendants). The gravamen of Plaintiffs' complaint is that Nazar, Matti, and SRS are working together to improperly compete against Ashlynn Marketing by manufacturing, marketing, distributing, and selling kratom products as well as soliciting Ashlynn Marketing's customers through a wrongfully obtained customer list.

Matti and SRS filed a joint answer to the complaint. That answer did not allege that the complaint was subject to arbitration.[5]

The same day that Matti and SRS filed their answer, Nazar filed a motion to compel arbitration regarding all claims alleged against him.[6] In opposing the motion, Plaintiffs argued the matter should proceed in superior court under the third party litigation exception pursuant to section 1281.2, subdivision (c). In support of their opposition, Plaintiffs submitted evidence

---

[5]    Matti and SRS are represented by the same counsel. Nazar is represented by separate counsel.

[6]    Nazar also submitted an ex parte application for an order staying all further proceedings in the instant matter pending determination of the motion to compel arbitration. The superior court granted the application in part, staying all discovery propounded on Nazar as well as any third party subpoenas relating to him. However, the court allowed all other discovery propounded by or to the other parties in the action, including discovery aimed at third parties, to proceed on a limited basis "so long as they do not seek discovery of documents and/or information relating to the underlying dispute between [Nazar] and Plaintiffs." Subsequently, in response to an ex parte application filed by Plaintiffs, the court modified its order to allow Plaintiffs to "pursue discovery from other, non-arbitrable defendants (Matti and SRS), and from third-parties, so long as such discovery is relevant to Plaintiffs' claims against Matti and SRS, *even if* such discovery may *also* touch in some way upon or relate to [Nazar]."

4

that they asked Matti and SRS to arbitrate the dispute multiple times, but Matti and SRS would not agree to do so.

The superior court denied the motion to compel arbitration on the ground that the third party litigation exception applied.  In doing so, the court discussed its options under section 1281.2, including denying the motion to compel arbitration, staying the arbitration pending disposition of nonarbitrable claims in the court, and staying the litigation pending completion of the arbitration, and opted to deny the motion outright.  To this end, the court explained:

> "The complaint is based on allegations that [Nazar] and Matti jointly conspired to form SRS to compete with Ashlynn [Marketing] in violation of the non-compete/non-solicitation provision.  [Nazar] argues the claims against SRS and Matti are 'derivative' and depend on the existence of his breach, and therefore staying the litigation is the better approach.  However, the stay [Nazar] proposes would not solve the problem.  For example, assuming the arbitrator concluded that [Nazar] did breach the agreement, that same issue would still need to be relitigated in court where a jury could find no such breach ever occurred.  The claims and issues raised by the complaint are simply too inextricably mixed, and the possibility of conflicting rulings cannot reasonably be avoided by a stay.  A stay would also be inefficient and inconsistent with the other policy underlying section 1281.2- avoiding duplication of efforts.  The entire case should be resolved in a single forum, and given SRS and Matti's refusal to stipulate to arbitration, the only available forum is court, where litigation against those two defendants has already been underway for months."

Nazar timely appealed.

## DISCUSSION

"California law reflects a strong public policy in favor of arbitration as a relatively quick and inexpensive method for resolving disputes.  [Citation.]

5

To further that policy, section 1281.2 requires a trial court to enforce a written arbitration agreement unless one of three limited exceptions applies. [Citation.] Those statutory exceptions arise where (1) a party waives the right to arbitration; (2) grounds exist for revoking the arbitration agreement; and (3) pending litigation with a third party creates the possibility of conflicting rulings on common factual or legal issues. (§ 1281.2, subds. (a)-(c).)" (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 967 (*Acquire II*).) Here, we are concerned with the third statutory exception.

The third party litigation exception, which is codified at section 1281.2, subdivision (c), may apply if the following conditions are met: (1) "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party"; (2) the third party action "aris[es] out of the same transaction or series of related transactions"; and (3) "there is a possibility of conflicting rulings on a common issue of law or fact." (§ 1281.2, subd. (c).) "If all three of these conditions are satisfied, then section 1281.2[, subdivision] (c) grants a trial court discretion to either deny or stay arbitration despite an agreement to arbitrate the dispute. [Citation.] Specifically, section 1281.2 identifies four options from which the court may choose: (1) 'refuse to enforce the arbitration agreement and . . . order intervention or joinder of all parties in a single action or special proceeding'; (2) 'order intervention or joinder as to all or only certain issues'; (3) 'order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding'; and (4) 'stay arbitration pending the outcome of the court action or special proceeding.' (§ 1281.2.)" (*Acquire II, supra*, 213 Cal.App.4th at pp. 967-968.)

6

A superior court does not have discretion to deny a motion to compel or to stay arbitration unless all three of section 1281.2, subdivision (c)'s conditions have been satisfied. (*Acquire II*, *supra*, 213 Cal.App.4th at p. 968.) "When section 1281.2[, subdivision] (c) applies, 'the trial court's discretionary decision as to whether to stay or deny arbitration is subject to review for abuse.' [Citations.] The trial court's decision whether section 1281.2[, subdivision] (c) applies, however, is reviewed under either the substantial evidence standard or the de novo standard. If the court based its decision on a legal determination, then we adopt the de novo standard. [Citations.] If the court based its decision on a factual determination, then we adopt the substantial evidence standard of review. [Citation.] Whether there are conflicting issues arising out of related transactions is a factual determination subject to review under the substantial evidence standard." (*Id.* at pp. 971-972.)

Here, Nazar raises two primary challenges. First, he claims the superior court erred in determining that the third party exception applies. Second, in the alternative, he argues that even if the third party exception applies, the court abused its discretion by denying the motion to compel arbitration instead of staying the court action while allowing the arbitration between Plaintiffs and Nazar to proceed. We address each contention in turn.

Nazar does not dispute that the second condition of the third party exception under section 1281.2, subdivision (c) was satisfied. Indeed, Nazar acknowledges that Plaintiffs' "claims against Matti and [SRS] are intertwined with and inherently dependent on their claims against [Nazar] (unfair business practice, inducing breach of contract, interference with contract, and conspiracy to defraud)."

7

Additionally, Nazar appears to offer, at most, a superficial challenge to the superior court's finding that inconsistent rulings were possible if the arbitration were to proceed. To this end, he faults the court for "ignoring its own power and obligation to confirm or vacate the arbitrator's award" under section 1286 in concluding that the arbitrator's ruling on whether Nazar breached the Agreement could conflict with the jury's finding on the same issue. Yet, section 1286 merely states: "If a petition or response under this chapter is duly served and filed, the court shall conform the award as made, whether rendered in this state, or another state, unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceedings." It does not address the potential of conflicting rulings, and Nazar offers no explanation how section 1286 supports his position here.[7] In this sense, he has not carried his burden on appeal regarding this issue.

" 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' [Citation.] Although we exercise our discretion to consider arguments for which we can discern a legal or factual basis in the briefs, there are many instances when no such basis is apparent. 'We are not obliged to make other arguments for [appellant] [citation], nor are we obliged to speculate about which issues counsel intend to raise.' [Citations.] We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant

---

[7]     To the extent Nazar is implying that the superior court has broad discretion to vacate an arbitration award to avoid conflicting rulings with an ongoing superior court case, he is mistaken. Generally, a superior court may only vacate an arbitration award under specific circumstances. (See §§ 1286.2, 1286.4.)

reached the conclusions he wants us to adopt.' [Citation.]" (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

Here, Nazar does not sufficiently develop his assertion that the superior court erred in concluding there was the possibility of conflicting rulings on a common issue of law or fact.[8] "The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)[9]

In contrast to his treatment of the second and third conditions of the third party litigation exception under section 1281.2, subdivision (c), Nazar

---

[8]    Also, we are not persuaded by Nazar's assertion that there is no need to be concerned about conflicting rulings because the arbitrator's decisions regarding a breach of the Agreement and/or Settlement "should have a res judicata effect" on Plaintiffs' claims against Matti and SRS. He provides no authority to support this assertion; thus, he has waived this argument on appeal. (See *In re Marriage of Falcone & Fyke*, *supra*, 164 Cal.App.4th at p. 830.) Moreover, Nazar ignores the unfairness of applying an arbitrator's finding of breach of contract on Matti and SRS without those two defendants being given the opportunity to defend themselves in superior court on that very issue. Such a situation is exactly the circumstance the third party litigation exception is meant to avoid. (Cf. *Acquire II*, *supra*, 213 Cal.App.4th at p. 968.)

[9]    Nazar also claims the superior court erred in finding the third party exception applicable because its ruling was "partly based on its evidentiary findings on a combination of [Plaintiffs'] allegations and their discovery already performed in this [c]ase." Additionally, he argues the court played a role in creating the possibility of conflicting rulings by allowing Plaintiffs to take discovery against Matti and SRS. Neither of these arguments is supported by any relevant legal authority. We thus find them waived. (See *In re Marriage of Falcone & Fyke, supra*, 164 Cal.App.4th at p. 830.) Further, we see no issue with a superior court considering the evidence submitted in support of or in opposition to a motion to compel arbitration when it bears on the possibility of conflicting rulings between an arbitration and the underlying superior court action.

focuses most of his brief on the first condition—that Plaintiffs, as signatories to an arbitration agreement, are also parties to a pending court action with a third party. Specifically, Nazar argues the superior court erred in determining that Matti and SRS were third parties. We disagree.

For purposes of section 1281.2, subdivision (c), a third party is one who is neither bound by nor entitled to enforce the arbitration agreement. (*Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 612.) Here, there is no evidence or argument in the record that either Matti or SRS signed the Agreement or the Settlement. Indeed, it is undisputed that the only signatories were Plaintiffs and Nazar. Nonetheless, Nazar insists the court erred in considering Matti and SRS third parties for purposes of his motion to compel arbitration.

Here, Nazar claims: "The trial court's primary issue was its failure to consider the third-party litigation exception in the posture of a signatory attempting to enforce his explicit arbitration right." In this sense, Nazar contends that the trial court did not appropriately contemplate the fact that he, as a signatory to a valid arbitration agreement, was seeking to arbitrate against other signatories. This argument borders on nonsensical. Section 1281.2, subdivision (c) often arises under circumstances, like the one here, where a party to an arbitration agreement is seeking to enforce provisions against other signatories but non-signatories are also parties to the underlying lawsuit. (See *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393 (*Cronus*) ["Section 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement"].) Thus, section 1281.2, subdivision (c) allows a court discretion not to enforce an arbitration agreement under certain enumerated circumstances. (*Cronus*, at

10

p. 393; § 1281.2, subd.(c).) It logically follows that a court would determine whether section 1281.2, subdivision (c) applies when a party petitions to compel arbitration under a valid arbitration provision. This is precisely what happened below.

Nazar also insists the superior court erred in concluding that Matti and SRS were third parties because the court's finding that Matti and SRS refused to arbitrate is not supported by substantial evidence. In support of his position, Nazar points to a joinder Matti and SRS filed wherein they requested the court grant the motion to compel arbitration as to Nazar and Plaintiffs only and to stay the superior court action as to them pending the outcome of the arbitration. Here, it appears Nazar is confusing a willingness to arbitrate a dispute with an inclination to allow other parties to arbitrate their dispute. Below, the trial court found that "SRS and Matti have steadfastly <u>refused</u> to arbitrate, as made particularly apparent by their separate counsel during oral argument." That finding was supported by an abundance of evidence in the record. For example, Plaintiffs offered a declaration from their attorney as well as correspondence showing the unsuccessful efforts Plaintiffs undertook to persuade Matti and SRS to agree to arbitrate Plaintiffs' claims against them.

In fact, in the joinder on which Nazar relies here, Matti and SRS vigorously argued that they were not signatories to any arbitration agreement and should not be compelled to arbitrate Plaintiffs' claim against them. Clearly, the trial court's finding that Matti and SRS have refused to arbitrate is supported by substantial evidence.

Next, Nazar maintains that estoppel undermines the trial court's conclusion that Matti and SRS were third parties. Accordingly, relying on *Rowe v. Excline* (2007) 153 Cal.App.4th 1276 (*Rowe*), Nazar contends "a party

11

may be estopped from asserting he is a third party where he also seeks to receive the benefits of an arbitrable agreement against that non-signatory." That argument is inapplicable here as is *Rowe*. In that case, individual nonsignatory defendants were allowed to require arbitration against a signatory plaintiff, but the plaintiff had sued the nonsignatory defendants as alter egos to a corporate signatory on causes of action directly based on a contract and sought recovery under contract terms. (See *id.* at pp. 1279-1281.) No analogous factual scenario exists before us. The instant action does not concern Matti and SRS trying to enforce an arbitration agreement against Plaintiffs.

Nevertheless, Nazar insists the rationale of *Rowe* and estoppel should apply here with equal force: "[I]f estoppel would operate to prevent a plaintiff from disclaiming a third party's benefit to an arbitration agreement due to plaintiff's acts impleading them and making claims arising from that agreement, then that plaintiff must also be estopped to disclaim the arbitration agreement with this counter-signatory under the same circumstances." We find this argument unpersuasive. Plaintiffs are not attempting to disclaim the subject arbitration provision. In fact, they attempted to get all defendants in the underlying lawsuit to arbitrate the dispute. However, Matti and SRS consistently refused to do so. So, the instant action consists of Plaintiffs, who are parties to an arbitration agreement, suing a signatory defendant and two nonsignatory defendants. Thus, the instant matter here presents the "peculiar situation" that section 1281.2, subdivision (c) covers. (See *Cronus, supra,* 35 Cal.4th at p. 393.) Nothing in *Rowe* or the principle of estoppel changes the nature of the case before us. Again, this is not a case, like *Rowe*, where nonsignatory

12

defendants are seeking to enforce an arbitration agreement against a signatory plaintiff.

Finally, Nazar claims the trial court erred in determining Matti and SRS are third parties because the operative complaint contains allegations, on information and belief, that each of the named defendants were the "principal, partner, member, agent, employer, representative, and/or employee of the others, and was acting within the scope of said agency and/or employment, and was aware of and ratified the acts of the others." Nazar argues these agency allegations "constitute judicial admissions and should be taken as true for purposes of the" motion to compel arbitration. This argument, however, appears to be based on another misapplication of *Rowe*. There, the appellate court concluded that the nonsignatory defendants were entitled to enforce the subject arbitration agreement against the signatory plaintiff because that plaintiff alleged that the nonsignatory defendants were the alter egos of the signatory defendant and were liable for breach of contact. (*Rowe, supra*, 153 Cal.App.4th at pp. 1284-1285.) Here, we have no such situation. Plaintiffs are not suing Matti and SRS for breach of contract. More importantly, neither Matti nor SRS are attempting to force Plaintiffs to arbitrate their claims against them. Rather, it is quite the opposite situation in that Matti and SRS have refused to submit the dispute to arbitration and both argued below that they "should not be forced to arbitrate as non-consenting, non-signatories to the arbitration agreement." Moreover, Matti and SRS did not "concede that they were the alter ego or agent of one another, and in fact, vehemently deny such accusations."

We acknowledge that the operative complaint includes boilerplate agency allegations. However, these agency allegations have no bearing on the issue at hand. In a proceeding on a motion to compel arbitration, the

13

superior "court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion to reach a final determination." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) Here, evidence was submitted bearing on the issue of agency. For example, in opposing the motion to compel arbitration, Plaintiffs did not argue that Matti and/or SRS were the agents of Nazar. Indeed, they conceded a lack of agency by offering evidence that they asked Matti and SRS to arbitrate the dispute, but Matti and SRS declined to do so.[10] Additionally, below, Matti and SRS submitted evidence and argument that they were not Nazar's agents, did not sign the Agreement or Settlement, and did not agree to arbitrate the dispute. Against this backdrop, the complaint's allegations do not trump the evidence before the superior court.

Again, we observe that the boilerplate agency allegations could be relevant under *Rowe* if Matti and SRS were seeking to enforce the subject arbitration provision against Plaintiffs. (See *Rowe*, *supra*, 153 Cal.App.4th at p. 1290.) But they are not. The context in which we find this case on appeal remains a defendant, who is a signatory to an arbitration agreement, seeking to arbitrate its dispute with signatory plaintiffs. The wrinkle here is that two of the other defendants in the underlying action are not parties to the arbitration agreement and refuse to arbitrate. They are third parties under section 1281.2, subdivision (c).

Having concluded that the superior court did not err in determining that the third party litigation exception applies, we next turn to Nazar's claim that the superior court abused its discretion in electing to deny the

---

10    If Plaintiffs had evidence that Matti and SRS were Nazar's agents, they could have moved to compel arbitration rather than asking Matti and SRS to agree to arbitration.

motion to compel arbitration and have the litigation proceed in superior court. "Under [the abuse of discretion] standard, '[t]he trial court's "application of the law to the facts is reversible only if arbitrary and capricious." [Citation.]' " (*Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 597.)

Nazar simply argues the court chose the wrong option under section 1281.2, subdivision (d). He therefore claims the court abused its discretion by "waiv[ing] [Nazar's] arbitration right for the sake of convenience, rather than order[ing] a more equitable and reasonable order respecting each party's rights." Yet, he does not provide any cogent argument in support of his position. He merely insists there was a better way to ensure that his bargained for right to arbitrate was enforced. But the existence of a valid arbitration agreement does not eclipse section 1281.2, subdivision (c). Indeed, the entire reason that statutory provision exists is that, despite the public policy favoring arbitration, there are times where it can do more harm than good, such as when some parties must arbitrate while others litigate the same issues in court. And simply because the court had another option, it does not follow that the option it chose was an abuse of discretion. In short, Nazar has not demonstrated any abuse of discretion, and therefore the superior court's order is affirmed.

DISPOSITION

The order is affirmed.  Plaintiffs are entitled to their costs on appeal.


                                                        HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.